Robert C. Schubert (S.B.N. 62684)
Dustin L. Schubert (S.B.N. 254876)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:  (415) 788-4220
Fax:         (415) 788-0161
rschubert@sjk.law
dschubert@sjk.law

*Counsel for Plaintiff Angelo Barbieri*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO BARBIERI, Derivatively on Behalf of IMMUNITYBIO, INC., <br><br> Plaintiff, <br><br> v. <br><br> PATRICK SOON-SHIONG, DAVID C. SACHS, RICHARD ADCOCK, CHERYL L. COHEN, MICHAEL D. BLASZYK, LINDA MAXWELL, and CHRISTOBEL SELECKY, <br><br> Defendants, <br><br> - and - <br><br> IMMUNITYBIO, INC., <br><br> Nominal Defendant. | No. **'25CV416  AGS JLB** <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> **Jury Trial Demanded** |

Verified Shareholder Derivative Complaint

Plaintiff Angelo Barbieri, by and through his undersigned counsel, brings this action derivatively on behalf of nominal defendant ImmunityBio, Inc. ("ImmunityBio" or the "Company") against certain of its current officers and directors for breaches of fiduciary duty, unjust enrichment, and violations of the federal securities laws. The allegations below are made upon personal knowledge as to Plaintiff and his own acts, and upon information and belief as to all other matters based upon a review of: (a) information publicly disseminated by ImmunityBio, including its public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, investor conference transcripts, and postings on its website; (b) news reports and other publicly available sources; and (c) court dockets, filings, and orders related to pending litigation involving ImmunityBio. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF ACTION**

1.     This is a shareholder derivative action on behalf of ImmunityBio asserting claims for breach of fiduciary duty, unjust enrichment, and violations of Sections 14(a), 10(b), and 21D of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder against certain current officers and directors of the Company for their alleged wrongful conduct between March 10, 2021 and May 10, 2023 (the "Relevant Period").

2.     ImmunityBio is a clinical-stage biopharmaceutical company focused on developing and commercializing next-generation therapies, treatments, and vaccines to defeat various cancers and infectious diseases by boosting the natural immune system. During the Relevant Period, ImmunityBio had no products approved by U.S. Food and Drug Administration ("FDA"). The Company's flagship product candidate—Anktiva, its novel antibody cytokine fusion protein treatment for certain bladder cancers—represented the cornerstone of ImmunityBio's business strategy and short- and long-term prospects. Given Anktiva's nature as a biologic drug (i.e., one

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

derived from living organisms), the Company had to prepare, submit, and receive FDA approval for a Biologics License Application ("BLA"). The Company's future therefore critically hinged on the success of Anktiva's BLA.

3.     Depending on a biopharmaceutical company's particular resources and infrastructure, it can either manufacture its drug products in-house or utilize third-party contract manufacturing organizations ("CMOs"). Here, for Anktiva's active pharmaceutical ingredient, ImmunityBio turned to AGC Biologics, Inc. ("AGC") as its CMO. Regardless of this outsourcing, the Company repeatedly assured investors at all relevant times that all of its manufacturing resources complied with applicable current Good Manufacturing Practices ("cGMP") regulations, its facilities had "robust" oversight, and that "[t]o the extent we use CMOs, we are ultimately responsible for the manufacture of our products."

4.     Unbeknownst to investors, however, AGC had a checkered history of significant regulatory compliance failures. In March and July 2021, the FDA issued a Form 483—an official document that memorializes any serious departures from FDA requirements and cGMP—to the site's management following on-site inspections. Even after learning of these troubling Form 483s from the FDA, ImmunityBio was aware of other serious compliance issues with AGC that persisted in the lead-up to the Company's May 2022 BLA for Anktiva. Nevertheless, ImmunityBio forged ahead.

5.     On May 23, 2022, ImmunityBio announced that it submitted its Anktiva BLA to the FDA, which was later "accepted" for review in July 2022. The FDA set May 23, 2023 as its target response date. Unbeknownst to investors and the public, the Company's May 2022 BLA as submitted was, in fact, deficient, resulting in the FDA rejecting the Company's Anktiva application.

6.     In connection with the Company's Anktiva BLA, the FDA investigated and inspected AGC's facilities between February 2 and 10, 2023. At the close-out meeting on February 10, 2023, the FDA issued a scathing five-item, fifteen-page Form 483 detailing a litany of serious cGMP regulatory violations (several of which tracked

issues previously identified by the FDA in prior inspections, which went unresolved). The problems were so severe that the FDA classified the inspection as "Official Action Indicated," its highest tier of violations. Official Action Indicated determinations are rare and reserved for situations where administrative or enforcement action is recommended and "one or more manufacturing systems is out of control."

7.    Investors learned the fate of ImmunityBio's Anktiva BLA and the woeful state of the Company's manufacturing processes, prospects, and CMO operations on May 11, 2023, when the Company's announced it had received the FDA's May 9, 2023 Complete Response Letter ("CRL") on Anktiva in response to the BLA. The FDA denied the Anktiva application and determined that "it cannot approve the BLA in its present form" given deficiencies identified with its CMO (here, AGC). The shocking announcement sent ImmunityBio's stock price plummeting by more than 55% in a single day.

8.    Throughout the Relevant Period, ImmunityBio shareholders were led to believe that Anktiva was manufactured in compliance with all applicable industry and regulatory standards, and thus on track for FDA approval and commercial sales—when the Company's key executives and directors knew that Anktiva's manufacturing processes were noncompliant and that its CMO suffered from serious and persistent issues relating to recordkeeping, quality control, basic sanitation standards, and deviation management. As a result of the failed BLA, the Company had to delay its commercialization timeline for Anktiva. Regardless of Anktiva's later FDA approval on April 22, 2024, the Individual Defendants (defined *infra*) caused the Company to submit the flawed BLA to the FDA and to repeatedly and publicly tout an impossible commercialization timeline for Anktiva, all while concealing the true nature of these deficiencies from the Company's investors and the public through a series of false and misleading statements.

9.    This wrongful conduct has damaged the Company and subjected it to costly litigation. On June 30, 2023, investors seeking to recoup their losses in

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

ImmunityBio stock sued the Company and certain of its officers and directors for violations of the federal securities laws in this District, captioned *In re ImmunityBio, Inc. Securities Litigation*, Case No. 3:23-cv-01216-GPC-VET (S.D. Cal.) (the "Securities Class Action"). In addition to the Company, the Securities Class Action names the following individuals as defendants: Patrick Soon-Shiong (Executive Chairman of the Board and Global Chief Scientific and Medical Officer), Richard Adcock (Chief Executive Officer), and David C. Sachs (Chief Financial Officer). Each of these individuals is also named as a defendant herein. By Order dated June 20, 2024, U.S. District Judge Gonzalo P. Curiel denied, in part, the motion to dismiss the Securities Class Action, holding that investors stated actionable claims against the defendants under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 and that the complaint adequately alleged facts showing the defendants acted with a "strong inference of scienter"—or intent to defraud. The Securities Class Action has exposed the Company to massive liability for securities fraud.

10.    Shareholder value has been severely damaged by the Individual Defendants' misconduct and other wrongdoing, including their breaches of fiduciary duty of care. This shareholder derivative action seeks to recoup losses that ImmunityBio has sustained (and will continue sustaining) in connection therewith.

11.    Additionally, in causing the Company to issue false and misleading statements, exposing the Company to the Securities Class Action, and committing the other alleged wrongdoing (or failing to prevent it despite clear warning signs), each Individual Defendant named herein (and a majority of the members of the current ImmunityBio Board of Directors) acted in bad faith and faces a substantial likelihood of liability for breach of fiduciary duty and violating the federal securities laws. Furthermore, multiple members of ImmunityBio's Board are not independent or are otherwise conflicted.

Verified Shareholder Derivative Complaint                                    4

12.    Under these circumstances, any pre-suit demand on the Board to bring the asserted claims would be futile, and is therefore excused, as set forth herein.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Sections 14(a), 10(b), and 21D of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

14.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) and (d) and § 1401. ImmunityBio and the Individual Defendants have conducted business in this District and/or their actions have had an effect in this District, the Company maintains its principal executive offices within this District, and a substantial portion of the wrongs complained of herein occurred in this District. The Court has personal jurisdiction over each defendant because each defendant is either a corporation that does sufficient business in this District or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

16.    This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

## PARTIES

**Plaintiff**

17.    Plaintiff Angelo Barbieri is a current holder of 550 shares of ImmunityBio stock and has continuously owned ImmunityBio shares since March 2021, and before then since at least approximately 2020 under the Company's predecessor name NantKwest, Inc. Plaintiff Barbieri will fairly and adequately represent ImmunityBio's interests in this action.

**Nominal Defendant**

18.    Nominal Defendant ImmunityBio is a Delaware corporation with its principal executive offices currently located at 3530 John Hopkins Court, San Diego, California 92121. ImmunityBio's common stock trades on the Nasdaq under the ticker symbol "IBRX."

**Individual Defendants**

19.    ***Defendant Patrick Soon-Shiong*** has served as Executive Chairman of the Board since October 2020 and as the Company's Global Chief Scientific and Medical Officer since August 2011. Previously, Soon-Shiong served as Chairman of the Board and Chief Executive Officer between March 2015 and October 2020. During the Relevant Period, Soon-Shiong served as Chair of the Company's Nominating and Corporate Governance Committee. According to the proxy statement ImmunityBio filed with the SEC on April 29, 2024, Soon-Shiong and his related affiliates beneficially owned 696,401,068 shares of ImmunityBio common stock (equivalent to approximately 82.8% of the Company's total outstanding common stock). Given that the price per share of ImmunityBio's common stock at the close of trading on April 29, 2024 was $8.99, Soon-Shiong and his affiliates beneficially owned approximately $6,260,645,601 worth of ImmunityBio common stock as of that date. Soon-Shiong is a named defendant in the Securities Class Action.

20.    For the 2023 Fiscal Year, Defendant Soon-Shiong received $865,340 in total compensation from the Company. This included $621,000 in salary, $232,875 in bonuses, and $11,465 in all other compensation. For the 2022 Fiscal Year, Defendant Soon-Shiong received $3,788,251 in total compensation from the Company. This included $616,962 in salary, $3,159,057 in stock option awards, and $12,232 in other compensation. For the 2021 Fiscal Year, Defendant Soon-Shiong received $839,867 in total compensation from the Company. This included $237,692 in salary, $45,000 in bonuses, $300,571 in stock option awards, $210,000 in incentive performance-

based compensation, and $46,604 in other compensation. Thus, for Fiscal Years 2021 to 2023, Defendant Soon-Shiong received total compensation of $5,493,458.

21.    ***Defendant David C. Sachs*** has served as ImmunityBio's Chief Financial Officer since March 2021 (and before then as Chief Financial Officer of ImmunityBio's subsidiary company NantCell, Inc. between July 2019 and March 2021). According to the proxy statement ImmunityBio filed with the SEC on April 29, 2024, Sachs beneficially owned 352,504 shares of ImmunityBio common stock. Given that the price per share of ImmunityBio's common stock at the close of trading on April 29, 2024 was $8.99, Sachs beneficially owned approximately $3,169,011 worth of ImmunityBio common stock as of that date. Sachs is a named defendant in the Securities Class Action.

22.    For the 2023 Fiscal Year, Defendant Sachs received $1,058,082 in total compensation from the Company. This included $537,525 in salary, $273,980 in bonuses, $233,457 in stock awards, and $13,120 in all other compensation. For the 2022 Fiscal Year, Defendant Sachs received $1,661,562 in total compensation from the Company. This included $521,039 in salary, $1,128,235 in stock option awards, and $12,288 in other compensation. For the 2021 Fiscal Year, Defendant Sachs received $4,936,677 in total compensation. This included $423,451 in salary, $35,625 in bonuses, $4,303,544 in stock awards, $166,250 in incentive performance-based compensation, and $7,807 in other compensation. Thus, for Fiscal Years 2021 to 2023, Defendant Sachs received total compensation of $7,656,321.

23.    ***Defendant Richard Adcock*** has served as ImmunityBio's Chief Executive Officer since October 2020 and as its President and an ImmunityBio director since March 2021. According to the proxy statement ImmunityBio filed with the SEC on April 29, 2024, Adcock beneficially owned 1,459,804 shares of ImmunityBio common stock. Given that the price per share of ImmunityBio's common stock at the close of trading on April 29, 2024 was $8.99, Adcock

beneficially owned approximately $13,123,638 worth of ImmunityBio common stock as of that date. Adcock is a named defendant in the Securities Class Action.

24.     For the 2023 Fiscal Year, Defendant Adcock received $1,156,903 in total compensation from the Company. This included $796,000 in salary, $298,500 in bonuses, and $62,403 in all other compensation. For the 2022 Fiscal Year, Defendant Adcock received $4,008,507 in total compensation from the Company. This included $790,760 in salary, $3,159,057 in stock option awards, and $58,690 in other compensation. For the 2021 Fiscal Year, Defendant Adcock received $29,016,727 in total compensation from the Company. This included $765,144 in salary, $57,656 in bonuses, $13,872,641 in stock awards, $13,969,483 in stock option awards, $269,063 in incentive performance-based compensation, and $82,740 in other compensation. Thus, for Fiscal Years 2021 to 2023, Defendant Adcock received total compensation of $34,182,137.

25.     **Defendant Cheryl L. Cohen** has served as an ImmunityBio director since June 2019 and as its Lead Independent Director since March 2023. During the Relevant Period, Cohen served as a member of the Company's Audit Committee and its Nomination and Corporate Governance Committee. According to the proxy statement ImmunityBio filed with the SEC on April 29, 2024, Cohen beneficially owned 652,881 shares of ImmunityBio common stock. Given that the price per share of ImmunityBio's common stock at the close of trading on April 29, 2024 was $8.99, Cohen beneficially owned approximately $5,869,400 worth of ImmunityBio common stock as of that date.

26.     For the 2023 Fiscal Year, Defendant Cohen received $506,253 in director compensation from the Company. This included $106,253 in fees earned or paid in cash and $400,000 in stock option awards. For the 2022 Fiscal Year, Defendant Cohen received $482,500 in director compensation from the Company. This included $82,500 in fees earned or paid in cash and $400,000 in stock option awards. For the 2021 Fiscal Year, Defendant Cohen received $385,873 in director compensation from

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

the Company. This included $85,302 in fees earned or paid in cash and $300,571 in stock option awards. Thus, for Fiscal Years 2021 to 2023, Defendant Cohen received a total of $1,374,626 in compensation from the Company.

27.    ***Defendant Michael D. Blaszyk*** has served as a director of ImmunityBio, Inc. since July 2015. During the Relevant Period, Blaszyk served as Chair of the Company's Audit Committee and as a member of its Compensation Committee. According to the proxy statement ImmunityBio filed with the SEC on April 29, 2024, Blaszyk beneficially owned 717,846 shares of ImmunityBio common stock. Given that the price per share of ImmunityBio's common stock at the close of trading on April 29, 2024 was $8.99, Blaszyk beneficially owned approximately $6,453,436 worth of ImmunityBio common stock as of that date.

28.    For the 2023 Fiscal Year, Defendant Blaszyk received $510,000 in director compensation from the Company. This included $110,000 in fees earned or paid in cash and $400,000 in stock option awards. For the 2022 Fiscal Year, Defendant Blaszyk received $509,260 in director compensation from the Company. This included $109,260 in fees earned or paid in cash and $400,000 in stock option awards. For the 2021 Fiscal Year, Defendant Blaszyk received $409,105 in director compensation from the Company. This included $108,534 in fees earned or paid in cash and $300,571 in stock option awards. Thus, for Fiscal Years 2021 to 2023, Defendant Blaszyk received a total of $1,428,365 in compensation from the Company.

29.    ***Defendant Linda Maxwell*** has served as a director of ImmunityBio, Inc. since July 2015. During the Relevant Period, Maxwell served as a member of the Company's Audit Committee and its Related Party Transaction Committee, and as Chair of the Company's Compensation Committee. According to the proxy statement ImmunityBio filed with the SEC on April 29, 2024, Maxwell beneficially owned 374,137 shares of ImmunityBio common stock. Given that the price per share of ImmunityBio's common stock at the close of trading on April 29, 2024 was $8.99,

Maxwell beneficially owned approximately $3,363,492 worth of ImmunityBio common stock as of that date.

30.    For the 2023 Fiscal Year, Defendant Maxwell received $487,500 in director compensation from the Company. This included $87,500 in fees earned or paid in cash and $400,000 in stock option awards. For the 2022 Fiscal Year, Defendant Maxwell received $486,003 in director compensation from the Company. This included $86,003 in fees earned or paid in cash and $400,000 in stock option awards. For the 2021 Fiscal Year, Defendant Maxwell received $662,979 in director compensation from the Company. This included $62,472 in fees earned or paid in cash and $600,507 in stock option awards. Thus, for Fiscal Years 2021 to 2023, Defendant Maxwell received a total of $1,636,482 in compensation from the Company.

31.    ***Defendant Christobel Selecky*** has served as a director of ImmunityBio, Inc. since March 2021 (and before then as a board member of ImmunityBio's predecessor private company since August 2020). During the Relevant Period, Selecky served as a member of the Company's Audit Committee and its Compensation Committee. According to the proxy statement ImmunityBio filed with the SEC on April 29, 2024, Selecky beneficially owned 374,137 shares of ImmunityBio common stock. Given that the price per share of ImmunityBio's common stock at the close of trading on April 29, 2024 was $8.99, Selecky beneficially owned approximately $3,363,492 worth of ImmunityBio common stock as of that date.

32.    For the 2023 Fiscal Year, Defendant Selecky received $470,000 in director compensation from the Company. This included $70,000 in fees earned or paid in cash and $400,000 in stock option awards. For the 2022 Fiscal Year, Defendant Selecky received $469,260 in director compensation from the Company. This included $69,260 in fees earned or paid in cash and $400,000 in stock option awards. For the 2021 Fiscal Year, Defendant Selecky received $654,424 in director compensation from the Company. This included $53,917 in fees earned or paid in cash

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

and $600,507 in stock option awards. Thus, for Fiscal Years 2021 to 2023, Defendant Selecky received a total of $1,593,684 in compensation from the Company.

33.    Defendants Soon-Shiong, Sachs, Adcock, Cohen, Blaszyk, Maxwell, and Selecky are sometimes collectively referred to herein as the "Individual Defendants."

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

34.    By reason of their positions as officers, directors, and/or fiduciaries of ImmunityBio, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owe (and owed) the Company and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and are (and were) required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

35.    The Individual Defendants are (and were) required to act in furtherance of the best interests of ImmunityBio and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

36.    Each director and officer of the Company owes (and owed) ImmunityBio and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.

37.    In addition, as officers and directors of a publicly held company, the Individual Defendants have (and had) a duty to promptly disseminate accurate and truthful information with regard to the Company's financial and business prospects so that the market price of the Company's stock is based on truthful information.

38.    The Individual Defendants, because of their positions of control and authority as directors and officers of ImmunityBio, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

39.    The misconduct of the Individual Defendants involves culpable violations of their obligations, the absence of good faith on their part, and a reckless disregard for the fiduciary duties owed to ImmunityBio and its shareholders, which

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Verified Shareholder Derivative Complaint                    11

they were aware or should have been aware posed a risk of serious harm to ImmunityBio.

40. At all relevant times, each Individual Defendant was the agent of each other and of ImmunityBio and was acting within the course and scope of such agency.

41. Accordingly, the Individual Defendants were responsible for ensuring that disclosures in the Company's reports and other documents filed with the SEC and statements issued publicly were materially complete and contained no significant misrepresentations or omissions.

42. The Company's website proclaims that its Board "sets high standards for the Company's employees, officers and directors. Implicit in this philosophy is the importance of sound corporate governance. It is the duty of the Board of Directors to serve as a prudent fiduciary for shareholders and to oversee the management of the Company's business."[1]

43. According to ImmunityBio's SEC filings, the Audit Committee was established "to oversee our accounting and financial reporting processes" and at all relevant times charged with responsibility to "assist the Board in monitoring our financial systems and our legal and regulatory compliance." Its other responsibilities included: "review[ing] our financial statements and our critical accounting policies and estimates" and "review[ing] the adequacy and effectiveness of our internal control." The Audit Committee also reviewed and discussed the results of the Company's annual audit and reviewed ImmunityBio's quarterly financial statements and publicly filed reports with management.

44. The Company's Audit Committee Charter further establishes that the Audit Committee's "purpose" is to assist the Board in fulfilling its responsibilities for overseeing ImmunityBio's "accounting and financial reporting processes and internal

---

[1] *Governance Documents*, IMMUNITYBIO, INC., https://ir.immunitybio.com/corporate-governance/governance-documents (last visited Feb. 8, 2025).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1    control over financial reporting, as well as the audit and integrity of the Company's

2    financial statements," "compliance with applicable law (including U.S. federal

3    securities laws and other legal and regulatory requirements)," and its "risk assessment

4    and risk management." Regarding the Company's financial statements, the Audit

5    Committee was charged with reviewing and discussing monthly and quarterly SEC

6    reports filed on Forms 10-K and 10-Q with ImmunityBio's management. Under the

7    Charter, Audit Committee members also "review[ed], in general, earnings press

8    releases" and "review[ed] and discuss[ed] with management … policies with respect

9    to earnings press releases, financial information and earnings guidance provided to

10    the public, analysts and ratings agencies." The Audit Committee also reviewed "the

11    adequacy and effectiveness" of the Company's internal controls and its "disclosure

12    controls and procedures." It was also charged with: (i) reviewing "the overall

13    adequacy and effectiveness of the Company's legal, regulatory and ethical compliance

14    programs" and any reports thereon, (ii) discussing with management "any

15    correspondence with regulators or governmental agencies and any published reports

16    that raise material issues regarding the Company's financial statements or accounting

17    policies," and (iii) discussing with the Company's senior legal officer "any legal

18    matters that may have a material impact on the financial statements or the Company's

19    compliance procedures." Finally, the Audit Committee Charter obligated its members

20    to review and discuss with ImmunityBio's management the Company's "major risk

21    exposure (whether financial, operating or otherwise) and the steps management has

22    taken to monitor, control and report those exposures, including the Company's

23    guidelines and procedures to govern the process by which risk assessment and risk

24    management are handled."

25        45.    The Company maintains a Code of Business Conduct and Ethics (the

26    "Business Conduct Code") which applies to all ImmunityBio officers, employees, and

27    directors. The Business Conduct Code proclaims that "integrity" is one of the

28    ImmunityBio's "core values" (and is valued "above all else"), which "means more

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Verified Shareholder Derivative Complaint                                    13

than just complying with the law." It affirms that, at the Company, "we all are responsible for understanding the important legal and ethical issues that affect our business and for acting with integrity at all times." Furthermore, the Company explains that its "commitment to doing the right thing … means complying with both the spirit and the letter of the laws."

46.     Additionally, the Company's Amended and Restated Corporate Governance Guidelines further emphasize the Board's responsibility to oversee management's performance and "assure that the best interests of stockholders are being served."   To discharge those duties, ImmunityBio directors shall "take a proactive approach to their duties and function as active monitors of corporate management," "provide oversight in the formulation of the long term strategic, financial, and organizational goals of the Company," and review and approve "standards and policies to ensure that the Company is committed to achieving its objectives through the maintenance of the highest standards of responsible conduct and ethics and to assure that management carries out their day-to-day operational duties in a competent and ethical manner."

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

47.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

48.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

49.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

50.    In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are (and were) directors, officers, and executives of the Company at relevant times, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

51.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

## FACTUAL ALLEGATIONS

### A.    Background of ImmunityBio

52.    ImmunityBio is a clinical-stage biotechnology company focused on the development and commercialization of immunotherapies and cell therapies to treat urologic and other cancers, as well as infectious diseases, by boosting the natural immune system. The Company's leading drug product candidate is Anktiva (also known as N-803), an immunotherapy targeting various forms of bladder cancer.

53.    The Company initially struggled to obtain formal FDA approval for Anktiva, but the FDA eventually approved Anktiva on April 22, 2024. Prior thereto, ImmunityBio did not generate any revenue from its other therapeutic and vaccine drug

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

candidates (as none were approved for commercial sale) and only received "minimal" revenue from other aspects of its business, like from licensing agreements. At the center of ImmunityBio's short- and long-term business strategy was Anktiva, its lead product candidate. Securing FDA approval for Anktiva was thus mission-critical for the Company, which had incurred net losses each year since its inception and a mounting accumulated deficit, which, as of March 31, 2024, totaled $3.1 billion.

54.     The Company was formed through the March 9, 2021 merger of two corporations controlled by Defendant Soon-Shiong: the publicly traded NantKwest, Inc. ("NantKwest") and a privately held company also called ImmunityBio, Inc. ("Legacy ImmunityBio"). Under the 100% stock-for-stock transaction, a subsidiary of NantKwest merged with and into Legacy ImmunityBio, with Legacy ImmunityBio continuing as the surviving entity, as a wholly owned subsidiary of NantKwest (and with NantKwest then changing its name to ImmunityBio). After the merger, Defendant Soon-Shiong and his affiliated entities owned approximately 82% of the Company's stock. He has maintained similarly high ownership percentages of the Company's common stock at all relevant times hereto, and, as of April 29, 2024, still controlled approximately 83% of ImmunityBio's outstanding shares.

55.     The combined Company following the March 2021 merger owned a portfolio of at least seventeen drug product candidates at various stages of clinical development, including several at late-stage clinical trials. Among those product candidates was Anktiva, which NantKwest obtained in 2017 through its acquisition of Altor Bioscience Corp. (a company also controlled by Soon-Shiong). In May 2017, Anktiva (then known as ALT-803) received Fast Track Designation from the FDA and later received Breakthrough Therapy Designation from the FDA in December 2019 for Anktiva's use in combination with Bacillus Calmette-Guérin ("BCG") for the treatment of BCG-unresponsive non-invasive bladder cancer carcinoma in situ. The FDA's Breakthrough Therapy Designation program expedites the development and review of drugs intended to treat serious conditions and fill unmet medical needs.

1    By March 2021, Anktiva had yielded impressive results in one of its Phase 3 trials and

2    the Company planned to apply for FDA approval.

3    56.    The path to bringing a new biologic drug like Anktiva to market is

4    complex and heavily regulated. Before any such product can be sold in the United

5    States, it must successfully navigate the FDA's rigorous approval process. This

6    process requires extensive pre-clinical testing, multiple phases of human clinical

7    trials, and comprehensive manufacturing quality assessments. For biologic products

8    like Anktiva, companies must submit a BLA to the FDA, which demands exhaustive

9    documentation of the product's chemical and biological characteristics, clinical trial

10    results demonstrating safety and efficacy, data from previously-produced performance

11    qualification batches used to validate the processes and equipment at scale, and

12    detailed evidence of manufacturing compliance with FDA regulations.

13    57.    Manufacturing quality is particularly crucial for biologic products like

14    Anktiva. These sophisticated therapeutics are typically more complex and sensitive to

15    manufacturing conditions than traditional pharmaceutical products. Biologic drugs are

16    produced from living organisms. Because manufacturing them can involve

17    microorganisms, plant cells, or animal cells, it is an especially sensitive process—and

18    producing biologic drugs at scale requires a series of highly-technical steps to ensure

19    a consistent end product free from impurities. Even minor variations in production

20    processes can affect their composition, safety, and efficacy. The FDA enforces

21    manufacturing quality through its cGMP regulations, which mandate robust quality

22    management systems, validated testing methods, reliable data recording, and strict

23    adherence to established procedures.

24    58.    To help produce its key drug product candidates like Anktiva,

25    ImmunityBio utilizes CMOs. For its Anktiva CMO, ImmunityBio turned to AGC.

26    CMOs generally provide drug development, packaging, distribution, and

27    manufacturing services to pharmaceutical and biotechnology companies—thereby

28    allowing these companies to focus on other priorities. Here, AGC was tasked only

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Verified Shareholder Derivative Complaint                    17

with manufacturing Anktiva's active pharmaceutical ingredient. Regardless of whether it outsourced this critical manufacturing task, ImmunityBio assured investors at all relevant times that all of its manufacturing resources complied with applicable cGMP regulations, its facilities had "robust" oversight, and "[t]o the extent we use CMOs, we are ultimately responsible for the manufacture of our products." *See*, *e.g.*, ImmunityBio Form 10-K for Fiscal Year 2021 (filed with the SEC on March 1, 2022).

## B. Leading Up to ImmunityBio's Pre-License FDA Inspection for Anktiva, cGMP Failures at Its CMO Were Well-Documented

59.     Unbeknownst to investors, ImmunityBio's selected CMO (here, AGC) had a troubling history of regulatory compliance issues. Between March 11 and 19, 2021, the FDA conducted a non-routine inspection at the same AGC building where Anktiva was manufactured. The March 2021 inspection resulted in the FDA issuing a Form 483—an official document that memorializes any serious departures from cGMP. An FDA Form 483 is issued to firm management at the conclusion of an inspection when an investigator has observed any conditions that in their judgment may constitute violations of FDA regulations, including cGMP. FDA investigators are trained to ensure that each deviation observation noted on an FDA Form 483 is clear, specific, and significant. The FDA Form 483 notifies the company's management of objectionable conditions. At the conclusion of an inspection, the inspector presents the FDA Form 483 and discusses it with the company's senior management. This procedure is designed to ensure that management understands each deviation observation and what they mean.

60.     The Form 483 issued by the FDA in connection with the March 2021 inspection of AGC included a sixteen-item list of objectionable observations, replete with numerous examples supporting each item. Most notably, these included failure on the part of AGC's quality unit to adequately investigate deviations, inadequate oversight of manufacturing procedures on the part of the quality unit, lack of adequate documentation for quality control testing, poorly qualified and validated

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

manufacturing processes, and gaps in recordkeeping such that inspectors could not determine whether manufacturing was operating in a state of control. Among other things, AGC committed to implement a corrective and preventative action ("CAPA") in response to this Form 483 that required it to complete a data integrity risk assessment for its computerized systems.

61.    Only four months later, between July 12 and 23, 2021, the FDA conducted a routine cGMP inspection of the same AGC building. This July 2021 inspection resulted in the issuance of a three-item Form 483. Among other things, this inspection found problems that would repeat themselves in the FDA's later February 2023 pre-license inspection in connection with ImmunityBio's BLA for Anktiva. For example, AGC either had deficient procedures or failed to follow existing procedures for sanitation, cleaning, and maintenance. In addition, the FDA again condemned AGC's failure to document conclusions or follow up actions in response to deviations.

62.    During the Relevant Period, ImmunityBio maintained a "Quality Agreement" with AGC (as recommended by the FDA) whereby AGC notified the Company of findings of any inspection by a government agency, including various deviations. Thus, ImmunityBio was apprised of the March and July 2021 Form 483s from the FDA (and of AGC's significant manufacturing problems).

63.    Even after these troubling Form 483s from the FDA, issues with AGC continued at the most basic level in the lead-up to the Company's May 2022 BLA for Anktiva, according to confidential witness allegations in the Securities Class Action.[2] These CWs allege, among other things, that: (i) ImmunityBio's CMO frequently failed to timely release manufacturing batch records (at least between August 2021 and

---

[2] While Plaintiff and his undersigned counsel have conducted their own investigation of the wrongdoings alleged herein, the confidential witness ("CW") statements and related allegations drawn therefrom in this Verified Shareholder Derivative Complaint are based upon the allegations set forth in the operative Securities Class Action complaint, filed November 17, 2023.

Verified Shareholder Derivative Complaint                              19

February 2023) and was unable to close out investigations into critical deviations from established protocols on schedule (with several deviations taking a full year or more to resolve) or without implementing CAPA; (ii) AGC regularly failed to conduct necessary stability tests at regular intervals (as required by cGMP) on Anktiva designed to show that the active ingredient produced there did not undergo unacceptable deterioration over time while in storage; (iii) AGC ran out of "reference material" in April 2022 used as the control against which batch samples were tested for composition and purity (a "major concern" for final quality control review and stability tests which forced ImmunityBio to later pay a "postponement fee"); and (iv) numerous batches of Anktiva failed and were discarded due to critical deviations from the established manufacturing process. Given these troubles, Defendant Adcock began regularly meeting with AGC executives every other week or monthly. Nonetheless, Company forged ahead with its Anktiva BLA and AGC as its CMO.

### C.    The Company's May 2022 BLA for Anktiva Was Doomed By AGC's Predictably Poor February 2023 FDA Inspection

64.    On May 23, 2022, ImmunityBio announced that it submitted its Anktiva BLA to the FDA for the treatment of BCG-unresponsive non-muscle invasive bladder cancer carcinoma in situ with or without Ta or T1 disease. The FDA later "accepted" the BLA for review in July 2022 and set a Prescription Drug User Fee Act ("PDUFA") target action date of May 23, 2023.

65.    In connection with the Anktiva BLA, on November 1, 2022, the FDA notified AGC that it planned a two-week pre-license inspection at the facility used to manufacture the drug substance for Anktiva in February 2023. The FDA assigned six inspectors to this project, signaling it would be more intensive than usual. According to CW statements in the Securities Class Action complaint: (i) ImmunityBio leadership, including Defendants Soon-Shiong and Adcock, became "very concerned" given the known history of deficiencies at the CMO, and asked to hold a mock inspection in January 2023 in advance of the FDA's February 2023 planned

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

inspection; (ii) Defendant Adcock was "intricately involved" in "all aspects" of the mock inspection; (iii) the mock inspection uncovered many objectionable conditions and rampant cGMP compliance deficiencies that required prompt remediation before the FDA's official fast-approaching inspection, including testing delays and gaps and weaknesses in AGC's data integrity systems; (iv) ImmunityBio's top leadership, including Defendant Adcock, was fully apprised of the mock inspection's results; and (v) ImmunityBio assembled a list of "gaps" that needed to be closed ahead of the February 2023 FDA inspection, but "there wasn't enough time between the pre-audit and actual audit to completely cover everything."

66. The FDA's AGC inspection began on February 2, 2023 and continued until February 10, 2023. ImmunityBio sent at least six representatives to attend the inspection who would then update leadership on the FDA's progress. However, on day one, the FDA observed several violations, prompting Defendant Soon-Shiong to demand real-time updates and executive-to-executive calls at the end of each inspection day. Defendant Adcock then flew overnight to the AGC site to participate in the rest of the inspection.

67. At the close-out meeting with ImmunityBio senior management on February 10, 2023, the FDA issued a scathing five-item, fifteen-page Form 483 detailing a litany of serious cGMP regulatory violations. The problems were so severe that the FDA classified the inspection as "Official Action Indicated," its highest tier of violations. Official Action Indicated determinations are rare and reserved for situations were administrative or enforcement action is recommended and "one or more manufacturing systems is out of control."

68. FDA inspectors cited multiple instances of inadequate deviation management at AGC from as far back as January 2021. They found that significant time passed between an event and its classification as a deviation (sometimes lasting a full year), AGC failed to conduct timely investigations (less than 40% of all deviations since July 2021 were closed on schedule and 80 investigations remained

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

open at the time of the inspection), and that deviation investigations were sometimes closed without appropriate documentation or CAPA. The FDA also found deficiencies in data integrity, missing validation for computer systems, and a lack of reliability of audit trails. AGC also failed in critical sanitation and contamination-management practices, some of the same issues that plagued AGC in the FDA's earlier March and July 2021 inspections, and performed stability tests outside planned test windows. Finally, the FDA determined that, at a base level, AGC's quality unit failed to adequately oversee manufacturing operations and, thus, appropriately fulfill its responsibilities.

## IMMUNITYBIO'S MATERIALLY FALSE AND MISLEADING STATEMENTS DURING THE RELEVANT PERIOD

69.    During the Relevant Period, ImmunityBio falsely and misleadingly represented its manufacturing strategies and capabilities, which portrayed that Anktiva was not experiencing cGMP difficulties and was compliant with FDA regulations when, in fact, the Company knew from FDA inspections and the Quality Agreement with AGC that it was not.

70.    For instance, ImmunityBio repeatedly and routinely boasted the following in its public statements: "***The company has established GMP manufacturing capacity at scale*** with cutting-edge cell manufacturing expertise, ready-to-scale facilities, extensive and seasoned R&D, clinical trial, and regulatory operations and development teams."[3] (March 10, 2021 press release titled "ImmunityBio Begins Trading Today on Nasdaq as Large Cap Biotechnology Company"). The Company reiterated the same or substantially identical public statement at least fifteen times on:

---

[3] Unless otherwise indicated, all emphases herein are added.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

- September 1, 2021 (press release titled "ImmunityBio Announces Oral Presentation of Phase 2/3 Clinical Trial Results of Patients with BCG-Unresponsive Bladder Cancer Carcinoma at the Upcoming American Urological Association's Annual Meeting");

- September 13, 2021 (press release titled "ImmunityBio Announces Positive Durable Responses in BCG Unresponsive Bladder Cancer Patients with a Complete Response Rate of 72%, Median Duration of Complete Response of 19.9 Months, and 85% Remaining Cystectomy-free in Phase 2/3 Trial");

- October 19, 2021 (press release titled "ImmunityBio Announces Primary Endpoint Met in a Second Indication in Bladder Cancer Trial with 57% Disease-Free Survival in Patients with BCG Unresponsive Papillary Disease");

- December 20, 2021 (press release titled "ImmunityBio Announces Completion of $470 Million Post-merger Financing to Fund Late-stage Cancer Clinical Trials, Phase 3 of COVID T-Cell Universal Boost Vaccine Trial and Provides Update on Bladder Cancer BLA Filing");

- March 1, 2022 (Form 10-K Annual Report for 2021 signed by the Individual Defendants);

- May 10, 2022 (Form 10-Q Report for the first quarter of 2022 signed by Defendants Adcock and Sachs);

- May 23, 2022 (press release titled "ImmunityBio Submits Biologics License Application for N-803 Plus BCG for Patients with BCG-Unresponsive Non-Muscle Invasive Bladder Cancer Carcinoma in Situ");

- June 6, 2022 (press release titled "ImmunityBio Announces QUILT Trial Results for BCG-Unresponsive Bladder Cancer and Advanced

Metastatic Pancreatic Cancer at the 2022 American Society of Clinical Oncology Annual Meeting");

- July 28, 2022 (press release titled "ImmunityBio Announces FDA Acceptance of Biologics License Application for N-803 in BCG-Unresponsive Non-Muscle-Invasive Bladder Cancer Carcinoma In Situ");

- August 8, 2022 (Form 10-Q Report for the second quarter of 2022 signed by Defendants Adcock and Sachs);

- November 9, 2022 (Form 10-Q Report for the third quarter of 2022 signed by Defendants Adcock and Sachs);

- November 10, 2022 (press release titled "NEJM Evidence Publishes Results for ImmunityBio's QUILT 3.032 Registrational Trial of IL-15 Superagonist N-803 Plus BCG in Patients with Bladder Cancer");

- February 7, 2023 (Shelf Registration Statement signed by the Individual Defendants);

- February 16, 2023 (Prospectus Supplement); and

- March 1, 2023 (Form 10-K Annual Report for 2022 signed by the Individual Defendants).

71.     Likewise, the Company similarly hyped that Anktiva would be manufactured in cGMP-compliant facilities which had robust oversight, stating: "***For our Anktiva product candidate, we have contracted with a multinational biologics manufacturer with multiple cGMP-compliant facilities*** in the United States, Europe and Asia for our current clinical trials and future commercial sales, if approved." and "***The facilities have robust process development and validation and quality oversight*** with high-capacity production suites operating multiple 2,000-20,000L production bioreactors." (March 1, 2022 Form 10-K Annual Report for 2021 signed by the Individual Defendants). The Company reiterated these statements on March 1, 2023

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1  (referencing N-803 instead of Anktiva) in its Form 10-K Annual Report for 2022
2  (signed by the Individual Defendants).

3      72.    Defendant Adcock echoed these statements on July 28, 2022 about
4  ImmunityBio's CMO's purported readiness to begin manufacturing Anktiva, stating:
5  "We are pleased the FDA has begun its review, and ***ImmunityBio is prepared to move***
6  ***rapidly to manufacturing*** and marketing should the Agency approve our therapeutic
7  for this indication." (press release entitled "ImmunityBio Announces FDA
8  Acceptance of Biologics License Application for N-803 in BCG-Unresponsive Non-
9  Muscle-Invasive Bladder Cancer Carcinoma In Situ").

10      73.    Additionally, during the Relevant Period, ImmunityBio misleadingly
11 downplayed various risks associated with obtaining FDA approval for Anktiva as
12 merely hypothetical, when, in fact, the Company knew that they had already
13 materialized. For example, ImmunityBio stated: (i) "The manufacture of our product
14 candidates is complex, and ***we may encounter difficulties in production, particularly***
15 ***with respect to process development, quality control, or scaling-up of our***
16 ***manufacturing capabilities. If we or our related parties, or any of our third-party***
17 ***manufacturers encounter such difficulties, our ability to provide supply of our***
18 ***product candidates for clinical trials or our products for patients, if approved, could***
19 ***be delayed or stopped,*** or we may be unable to maintain a commercially viable cost
20 structure," (ii) "***If we or our CMOs are unable to reliably produce products to***
21 ***specifications acceptable to the FDA or other regulatory authorities, or in***
22 ***accordance with the strict regulatory requirements, we may not obtain or maintain***
23 ***the approvals we need to commercialize such products***," and (iii) "***Our or our***
24 ***CMOs' manufacturing facilities may be unable to comply with our specifications,***
25 ***cGMP, and with other FDA, state, and foreign regulatory requirements***." (exhibit
26 to March 10, 2021 Form 8-K). The Company reiterated the same or substantially
27 identical public statements at least eight times on:

28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

- May 14, 2021 (Form 10-Q for the first quarter of 2021 signed by Defendants Adcock and Sachs);

- August 12, 2021 (Form 10-Q for the second quarter of 2021 signed by Defendants Adcock and Sachs);

- November 12, 2021 (Form 10-Q for the third quarter of 2021 signed by Defendants Adcock and Sachs);

- March 1, 2022 (Form 10-K Annual Report for 2021 signed by the Individual Defendants);

- May 10, 2022 (Form 10-Q for the first quarter of 2022 signed by Defendants Adcock and Sachs);

- August 8, 2022 (Form 10-Q for the second quarter of 2022 signed by Defendants Adcock and Sachs);

- November 9, 2022 (Form 10-Q for the third quarter of 2022 signed by Defendants Adcock and Sachs); and

- March 1, 2023 (Form 10-K Annual Report for 2022 signed by the Individual Defendants).

74.    The above statements in ¶¶ 70-73—made, approved, and otherwise authorized by the Individual Defendants—were materially false and misleading because they: (i) failed to disclose the true manufacturing compliance status of AGC, ImmunityBio's CMO for Anktiva, given its known, serious, and recurring cGMP failings, (ii) downplayed or omitted known regulatory risks to the approval of Anktiva arising from AGC's repeated violations of cGMP regulations, (iii) exaggerated ImmunityBio's oversight of its facilities as "robust," when, in fact, it was deficient, (iv) portrayed certain FDA regulatory and cGMP risks as merely hypothetical, when, in fact, they had already come to fruition, (v) omitted AGC's history of FDA Form 483 deviations, and (vi) misrepresented the likelihood of FDA approval for ImmunityBio's May 2022 BLA given these known manufacturing and compliance issues. Additionally, as a result of these false statements and omissions,

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

ImmunityBio's positive statements about the Company's general business, operations, and prospects were similarly materially misleading and lacked a reasonable basis.

## THE TRUTH EMERGES

75.     ImmunityBio investors learned the extent of the Company's Anktiva manufacturing and CMO problems on May 11, 2023, when it filed a Form 8-K with the SEC disclosing that on May 9, 2023, ImmunityBio received a CRL from the FDA rejecting its BLA for Anktiva. A CRL is a notice issued by the FDA in response to a BLA which explains why the application was rejected and typically includes the FDA's recommendations for how the applicant can fix the identified deficiencies. Specifically, the FDA's May 2023 CRL to ImmunityBio "indicates that the FDA has determined that it cannot approve the BLA in its present form." The "deficiencies" identified by the FDA had persisted despite repeated prior warnings and related to the FDA's "pre-license inspection of the Company's third-party contract manufacturing organizations." The FDA explained, "Satisfactory resolution of the observations noted at the pre-license inspection is required before the BLA may be approved."

76.     Upon this shocking news, ImmunityBio's stock fell $3.43 per share (or more than 55%), closing at $2.79 per share on May 11, 2023, damaging investors and shareholders.

77.     The Company has been severely damaged by the Individual Defendants' misconduct. This shareholder derivative action seeks to recoup losses that ImmunityBio has sustained (and will continue sustaining) in connection with the Individual Defendants' misconduct and wrongdoing.

## THE SECURITIES CLASS ACTION

78.     The Individual Defendants' wrongful conduct alleged herein has damaged the Company and subjected it to costly litigation. In addition to the Company, the Securities Class Action names as defendants Soon-Shiong, Adcock, and Sachs, and brings claims for violations of the federal securities laws under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. Generally, the

Verified Shareholder Derivative Complaint                                                27

Securities Class Action alleges that, in the course of seeking FDA approval for its flagship drug candidate product Anktiva, the defendants named therein misled investors to believe that Anktiva was manufactured in compliance with all applicable industry standards in the lead-up to ImmunityBio's critical BLA (and had touted its manufacturing capabilities)—when, in fact, the defendants knew the manufacturing process was noncompliant and that it suffered from other persistent problems.

79.     By Order dated June 20, 2024, U.S. District Judge Gonzalo P. Curiel denied, in part, the motion to dismiss the Securities Class Action, holding that investors stated actionable claims against the defendants under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 and that the complaint adequately alleged facts showing the defendants acted with a "strong inference of scienter"—or intent to defraud. More specifically, Judge Curiel held that the Securities Class Action plaintiff alleged with particularity that the defendants made false and misleading statements regarding Anktiva's cGMP compliance and its production risk factors. Judge Curiel found that the Securities Class Action plaintiff had adequately alleged "a number of serious and pervasive deficiencies relating to quality control, deviation management, and basic sanitation protocols" (which "persisted despite Defendants' attempts to ameliorate them") and that the defendants' risk-factor statements were "plausibly misleading because Defendants presented the prospect of 'production difficulties' and cGMP deficiencies as purely hypothetical when they had already occurred." Judge Curiel also found that the complaint adequately alleged a "strong inference of scienter" because the defendants "were well aware of the persistent manufacturing issues" and "considered them to be serious," "but nevertheless declined to disclose any information to investors." In conclusion, Judge Curiel explained, "a company suffering from severe and persistent manufacturing deficiencies must provide investors with some idea of the full picture if it chooses to boast of its manufacturing prowess. Defendants were entitled to their optimism; but they were not entitled to peddle that optimism to investors in a manner

that materially misrepresented the facts." The Securities Class Action has exposed the Company to massive liability for securities fraud.

## HARM TO THE COMPANY

80.     As a result of the Individual Defendants' improprieties, ImmunityBio failed to correct significant deficiencies in the Anktiva manufacturing process which resulted in the failed May 2022 FDA application and disseminated improper public statements concerning Anktiva's FDA approval prospects, deficiencies in the drug's manufacturing process, and the Company's progress in resolving these deficiencies. This misconduct has devastated ImmunityBio's credibility as reflected by the Company's almost $1.5 billion, or 55%, market capitalization loss.

81.     The Individual Defendants have severely harmed the Company. Damages to the Company include substantial loss of shareholder value and significant costs already incurred (and to be incurred) stemming from the events and allegations described herein, including costs defending against the Securities Class Action and paying any settlement or judgment that may result therefrom.

82.     The Company's business, goodwill, and reputation with its business partners, regulators, and shareholders have also been gravely impaired, and the credibility and motives of management and the Board are in serious doubt.

83.     While the Individual Defendants' actions have severely harmed the Company, each of them has been awarded generous compensation and stock packages and otherwise profited through their wrongful conduct, that additionally should accordingly be recouped.

## DEMAND WOULD BE FUTILE

84.     Plaintiff incorporates by reference and reallege each and every allegation above as though fully set forth herein.

85.     Plaintiff brings this action derivatively in the right and for the benefit of ImmunityBio pursuant to Rule 23.1 of the Federal Rules of Civil Procedure to redress injuries suffered by the Company as a direct and proximate result of the breaches of

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

fiduciary duty and violations of the federal securities laws by the Individual Defendants alleged herein. ImmunityBio is named as a nominal defendant solely in a derivative capacity.

86.    Plaintiff will adequately and fairly represent the interests of ImmunityBio in enforcing and prosecuting its rights, and Plaintiff has retained counsel experienced in shareholder litigation.

87.    Plaintiff is a current ImmunityBio shareholder and was a shareholder of the Company at the time of the wrongdoing alleged herein and continuously since that time.

88.    Because a majority of the current members of the ImmunityBio Board: (i) lack independence and (ii) face a substantial likelihood of liability for the acts and omissions complained of herein, prosecution of this action, independent of the current Board, is in the best interests of the Company and its stockholders.

89.    ImmunityBio is controlled by its Board, which at the time this action was commenced consists of the following eight members: Defendants Soon-Shiong, Adcock, Cohen, Blaszyk, Maxwell, and Selecky (together, the "Demand Defendants"), plus non-parties Wesley Clark and Barry J. Simon.

90.    Plaintiff has not made a pre-suit litigation demand on the Board to institute this action. Any such demand would be a futile and useless act because at least half of its current members is (*i.e.*, at least four directors) are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action under the demand futility analysis set forth in *United Food and Comm. Workers Union v. Zuckerberg*, 262 A.3d 1034 (Del. 2021). Here, demand is excused as futile as to at least seven members of the Board.

**Defendant Soon-Shiong Is Not Independent**

91.    Defendant Soon-Shiong lacks independence because he currently serves as Executive Chairman of the Board and as the Company's Global Chief Scientific and Medical Officer, positions he has held since October 2020 and August 2011,

Verified Shareholder Derivative Complaint                                                30

respectively. Soon-Shiong's current ImmunityBio position and livelihood depend upon the good graces of the Demand Defendants, who comprise a majority of the Board. As of May 1, 2024, Soon-Shiong's annual base salary was $621,000 (and his target bonus was 75% thereof). Recently, on February 7, 2025, the Compensation Committee approved a $372,600 2024 bonus for Soon-Shiong (to be paid by March 14, 2025), raised his 2025 base salary to $652,050, awarded him over 800,000 restricted stock units under the 2025 Long-Term Incentive Program, and gave him more than 2.8 million option awards. For Fiscal Year 2023, Soon-Shiong received $865,340 in total compensation from the Company (consisting of his $621,000 salary and $244,340 in bonuses and other compensation), and in Fiscal Year 2022 received almost $3.8 million in ImmunityBio compensation. The amounts are material to Soon-Shiong, and Soon-Shiong would never act to jeopardize these substantial payments by pursuing claims against the same directors who determine his compensation and continued employment.

92.    Furthermore, ImmunityBio's most recent proxy statement filed with the SEC on April 29, 2024 concedes that Soon-Shiong is not independent and that, given his massive ownership interests in the Company, ImmunityBio is a "controlled company" under Nasdaq rules. According to the 2024 Proxy Statement, Soon-Shiong and his affiliates beneficially owned 696,401,068 shares of ImmunityBio common stock (equivalent to approximately 82.8% of the Company's total outstanding common stock).

93.    Moreover, ImmunityBio is currently engaged in several material related party transactions with businesses and other entities affiliated or owned by Soon-Shiong, including NantWorks, LLC, NantBio, Inc., and others. Soon-Shiong would never act to jeopardize these lucrative related party transaction payments by pursuing claims against the same directors who are involved in the approval of such contracts and arrangements.

1    94.    For these reasons, Soon-Shiong would never act adversely to the Demand

2    Defendants in pursuing the claims alleged herein.

**Defendant Adcock Is Not Independent**

3

4    95.    Defendant Adcock lacks independence because he currently serves as the

5    Company's CEO and President, positions he has held since October 2020 and March

6    2021, respectively. Adcock's current ImmunityBio position and livelihood depend

7    upon the good graces of the Demand Defendants, who comprise a majority of the

8    Board. Under the terms of his October 2020 Offer of Employment and as of May 1,

9    2024, Adcock's annual ImmunityBio base salary was $796,000 (and his target bonus

10    was 75% thereof). Recently, on February 7, 2025, the Compensation Committee

11    approved a $477,600 2024 bonus for Adcock (to be paid by March 14, 2025), raised

12    his 2025 base salary to $835,800, awarded him over 800,000 restricted stock units

13    under the 2025 Long-Term Incentive Program, and gave him more than 2.8 million

14    option awards. For Fiscal Year 2023, Adcock received $1,156,903 in total

15    compensation from the Company (consisting of his $796,000 salary and $360,903 in

16    bonuses and other compensation). In prior years, Adcock received substantially

17    more—over $29 million in Fiscal Year 2021 and $4 million in Fiscal Year 2022,

18    mostly from stock and options awards. The amounts are material to Adcock, and

19    Adcock would never act to jeopardize these substantial payments by pursuing claims

20    against the same directors who determine his compensation and continued

21    employment. Furthermore, ImmunityBio's most recent proxy statement filed with the

22    SEC on April 29, 2024 concedes that Adcock is not independent. For these reasons,

23    Adcock would never act adversely to the Demand Defendants in pursuing the claims

24    alleged herein.

**Securities Class Action Defendants Soon-Shiong and Adcock Are Further Interested in This Litigation**

25

26

27    96.    Soon-Shiong and Adcock are further disabled from considering a

28    demand here because they are defendants in the Securities Class Action, where claims

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

for fraud have been upheld against them by Judge Curiel under the particularized pleading standards of the federal securities laws. The pendency of these claims for violating the federal securities laws in the Securities Class Action—where Soon-Shiong and Adcock both face a substantial likelihood of liability—renders it impossible for either Soon-Shiong or Adcock to impartially consider a shareholder demand as to the wrongdoing alleged herein.

**Non-Party Simon Is Not Independent**

97.     Non-party Simon lacks independence because he currently serves as the Company's Chief Corporate Affairs Officer, a position he has held since March 2021. Simon has held senior positions with the Company for the past eighteen years, since 2007. Simon served as the Company's President between 2007 and March 2021. During that period, he also served as CEO (2007 to 2015), Chief Operating Officer (2015 to 2016), and Chief Administrative Officer (January 2017 to March 2021). Simon's current ImmunityBio position and livelihood depend upon the good graces of the Demand Defendants, who comprise a majority of the Board. The amounts he earns in salary, bonuses, and other compensation are material to Simon, and Simon would never act to jeopardize these substantial payments by pursuing claims against the same directors who determine his compensation and continued employment. Additionally, Simon serves as president, CEO, and chairman of Brink Biologics, Inc., another company affiliated and controlled by Soon-Shiong. Furthermore, ImmunityBio's most recent proxy statement filed with the SEC on April 29, 2024 concedes that Simon is not independent. For these reasons, Simon would never act adversely to Soon-Shiong or the other Demand Defendants in pursuing the claims alleged herein.

**Six of Eight Demand Board Members Face a Substantial Likelihood of Liability for Their Wrongful Conduct**

98.     Six members of the current eight-person ImmunityBio Board—Defendants Soon-Shiong, Adcock, Cohen, Blaszyk, Maxwell, and Selecky—face a

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

substantial likelihood of liability for their wrongful misconduct as alleged herein. These Demand Defendants presided over the Company for all or portions of the relevant period alleged herein from March 10, 2021 and May 10, 2023, corresponding to the class period in the Securities Class Action during which false and misleading statements to shareholders and the market were made. These Board members breached their fiduciary duties to the Company by either knowingly or recklessly issuing or causing and/or allowing to be issued false and misleading statements to shareholders in the Company's press releases, SEC filings, and in other public comments concerning, at least: (a) the manufacturing compliance status of AGC, ImmunityBio's CMO for Anktiva, (b) known regulatory risks to the approval of Anktiva arising from AGC's repeated violations of cGMP regulations, (c) AGC's history of FDA Form 483 observations, (d) the likelihood of FDA approval for ImmunityBio's May 2022 BLA given these known manufacturing and compliance issues, and (e) that, as a result of these false statements and omissions, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and lacked a reasonable basis.

99.    Alternatively, or in addition to the foregoing breaches, the Demand Defendants face a substantial likelihood of liability for breaching their fiduciaries duties by failing to take any meaningful action to institute appropriate internal controls and processes related to cGMP compliance, quality assurance, or testing at its CMO and other facilities, or otherwise remedy the resultant harm—all of which culminated in the failed May 2022 FDA application for Anktiva. These actions demonstrate an utter disregard by a majority of the current Board for their fiduciary duties and the integrity of the Company's corporate governance and internal control environment.

100.    Furthermore, Defendants Cohen, Blaszyk, Maxwell, and Selecky were members of the Audit Committee at relevant times (the "Audit Committee Defendants") and therefore had a heightened duty to oversee ImmunityBio's compliance with legal and regulatory requirements, including its public disclosures

and its risk assessment- and internal control-related functions and other heightened obligations set forth above. In their capacity as members of the Audit Committee, the Audit Committee Defendants were privy to specific information related to the Company's business, operations, and prospects, which would reasonably put them on notice that the statements set forth above in the Company's public filings were materially false and misleading when made. The Audit Committee Defendants were responsible for knowingly or recklessly issuing or causing and/or allowing to be issued the false and misleading statements alleged herein and thus breached their fiduciary duties to the Company. By allowing documents to be filed with misleading information and/or failing to correct these false statements, the Audit Committee Defendants face a sufficiently significant likelihood of liability so as to render them interested. Accordingly, the Audit Committee Defendants cannot adequately independently consider a demand.

**Additional Demand Futility Allegations**

101.    Demand is further excused because any suit by the Board to address the wrongdoing alleged herein would increase the exposure of nominal defendant ImmunityBio to liability for violations of the federal securities laws in the Securities Class Action and would potentially result in additional lawsuits being filed against members of the Board. If ImmunityBio pursued its rights of action in this case, then the Company's efforts would undercut or even compromise the defense and settlement of the Securities Class Action, making demand on each of the directors futile.

102.    Furthermore, the facts and allegations of wrongdoing set forth in this shareholder derivative complaint closely track and overlap with the facts and allegations at issue in the Securities Class Action. According to its Quarterly Reports filed on Forms 10-Q with the SEC, the Company has determined that the allegations asserted in the Securities Class Action are "without merit" (May 9, 2024) and "disputes the claims and intends to defend the case vigorously" (November 12, 2024). Under these circumstances, a pre-suit demand on Immunity's Board to pursue the

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

claims at issue herein is excused as futile because the Company has predetermined (incorrectly) that the claims lack merit.

### CLAIMS FOR RELIEF

### COUNT I
**Derivative Claim for Breach of Fiduciary Duty
Against the Individual Defendants**

103.   Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

104.   As officers or directors of ImmunityBio, the Individual Defendants owe (and owed) the Company fiduciary duties of due care and loyalty.

105.   By virtue of their positions as officers and/or directors, the Individual Defendants at all relevant times had the power to and did control, influence, and cause the Company to engage in the practices complained of herein.

106.   The Individual Defendants knowingly or recklessly breached their fiduciary duties to the Company by repeatedly approving and causing the Company to issue false and misleading statements to shareholders and to fail to disclose material information regarding the Company's business and prospects for securing FDA approval for the May 2022 Anktiva BLA given known manufacturing and compliance issues, and by failing to promptly correct such false and misleading public statements. The Individual Defendants also knowingly or recklessly violated the Company's Business Conduct Code and the Audit Committee Defendants (Cohen, Blaszyk, Maxwell, and Selecky) knowingly or recklessly violated their duties and responsibilities established under the Company's Audit Committee Charter. The Individual Defendants further breached their fiduciaries duties by failing to take any meaningful action to institute appropriate internal controls and processes related to cGMP compliance, quality assurance, or testing at its CMOs and other facilities, or otherwise remedy the resultant harm—all of which resulted in the failed May 2022 FDA application for Anktiva.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1    107.    The Company's alleged liability in the Securities Class Action is a result

2    of the conduct described herein and arises from the knowing, disloyal, and/or bad faith

3    acts and omissions of the Individual Defendants.

4    108.    The Individual Defendants acted in bad faith and violated their fiduciary

5    duties of care and loyalty owed to the Company.

6    109.    As a direct and proximate result of the Individual Defendants' breaches

7    of their fiduciary duties, the Company has sustained significant damages.

8    110.    As a result of the misconduct alleged herein, the Individual Defendants

9    are liable to the Company.

### COUNT II
### Derivative Claim for Unjust Enrichment
### Against the Individual Defendants

10

11

12

13    111.    Plaintiff incorporates by reference and realleges each and every

14    allegation above as though fully set forth herein.

15    112.    By their wrongful acts and omissions, the Individual Defendants were

16    unjustly enriched at the expense of and to the detriment of the Company.

17    113.    The Individual Defendants were unjustly enriched as a result of the

18    compensation and stock they received and other profits collected while breaching their

19    fiduciary duties and issuing false and misleading statements to shareholders.

20    114.    Plaintiff, as a shareholder and representative of the Company, seeks

21    restitution from the Individual Defendants, and each of them, and seeks an order of

22    this Court disgorging all their profits, benefits, and other compensation obtained by

23    reason of the wrongful conduct and breaches of fiduciary duty alleged herein.

24    115.    Plaintiff, on behalf of the Company, has no adequate remedy at law.

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Verified Shareholder Derivative Complaint                    37

**COUNT III**

**Derivative Claim for Violations of Section 14(a) of the Exchange Act
Against the Individual Defendants**

116.  Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

117.  Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

118.  Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

119.  The 2021, 2022, and 2023 proxy statements (filed by the Company with the SEC on April 29, 2021, April 29, 2022, and April 29, 2023, respectively) violated Section 14(a) and Rule 14a-9 because they solicited ImmunityBio stockholder votes for, *inter alia*, director reelection, while simultaneously misrepresenting and/or failing to disclose: (i) that ImmunityBio continued to rely on AGC as its CMO for Anktiva, despite known, severe, persistent, and uncorrected cGMP deficiencies, and (ii) the Company's material shortcomings in connection with its Anktiva BLA, affecting the likelihood of FDA for Anktiva and the Company's business prospects generally. These proxy statements were also materially misleading because the facts show that the Board and its committees utterly failed to implement adequate controls to

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1  effectively oversee conduct risk relating to the Company's core business, operations,
2  and prospects in relation to the conduct alleged herein. Furthermore, these proxy
3  statements falsely represented that the Board and its committees were conducting
4  appropriate risk oversight, when they were not adequately exercising these functions
5  and were causing or permitting the Company to issue false and misleading statements.

6      120.    The Individual Defendants made untrue statements of material facts and
7  omitted to state material facts necessary to make the statements that were made not
8  misleading in violation of Section 14(a) and Rule 14a-9. By virtue of their positions
9  within the Company and roles in the process and in the preparation of the 2021, 2022,
10 and 2023 proxy statements, the Individual Defendants were aware of this information
11 and of their duty to disclose this information in the 2021, 2022, and 2023 proxy
12 statements.

13     121.    The Individual Defendants knew that the statements contained in the
14 2021, 2022, and 2023 proxy statements were materially false and misleading.

15     122.    The omissions and false and misleading statements in the 2021, 2022,
16 and 2023 proxy statements are material in that a reasonable stockholder would
17 consider them important in deciding how to vote on the reelection of directors. Indeed,
18 a reasonable investor would view a full and accurate disclosure as significantly
19 altering the "total mix" of information made available in the 2021, 2022, and 2023
20 proxy statements and in other information reasonably available to stockholders.

21     123.    As a direct and proximate result of the dissemination of the false and
22 misleading 2021, 2022, and 2023 proxy statements that the Individual Defendants
23 used to obtain stockholder approval of and thereby reelect directors, ImmunityBio
24 suffered damage and actual economic losses (i.e., wrongful reelection of directors) in
25 an amount to be determined at trial.

26
27
28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**COUNT IV**

**Derivative Claim for Violations of Section 10(b) and 21D of the Exchange Act Against Defendants Soon-Shiong, Adcock, and Sachs**

124.   Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

125.   Defendants Soon-Shiong, Adcock, and Sachs are named defendants in the Securities Class Action.

126.   ImmunityBio is also named as a defendant in the Securities Class Action, where the plaintiff asserts claims under the federal securities laws for, *inter alia*, violations of Sections 10(b) and 20(a) of the Exchange Act. If the Company is found liable for violating the federal securities laws, the Company's liability will arise, in whole or in part, from the intentional, knowing, or reckless acts or omissions of some or all of these defendants as alleged herein. The Company is entitled to receive contribution from Defendants Soon-Shiong, Adcock, and Sachs in connection with the Securities Class Action against the Company.

127.   Defendants Soon-Shiong, Adcock, and Sachs, because of their positions of control and authority as directors, officers and otherwise, had the power and/or ability to, and did, directly or indirectly, control or influence ImmunityBio's general affairs, including the content of public statements about the Company, and had the power and/or ability, directly or indirectly, to control or influence the specific corporate statements and conduct complained of herein and in the Securities Class Action that violated Section 10(b) of the Exchange Act and Rule 10b-5.

128.   Defendants Soon-Shiong, Adcock, and Sachs are liable under Section 10(b), 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act. As a result, Defendants Soon-Shiong, Adcock, and Sachs damaged ImmunityBio and are liable to the Company for contribution or indemnification.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of ImmunityBio, demands judgment against the Individual Defendants, and each of them, jointly and severally, as follows:

(a)     Determining that this action is a proper derivative action and that Plaintiff is an appropriate representative of the Company for said action;

(b)     Determining that a pre-suit litigation demand on the Board would be futile and is thus excused;

(c)     Declaring that each of the Individual Defendants breached their fiduciary duties to the Company, were unjustly enriched, and violated the federal securities laws, as set forth above;

(d)     Determining and awarding to the Company the damages sustained by it as a result of the breaches set forth above, or disgorgement or restitution, from each of the Individual Defendants, jointly and severally, together with interest thereon;

(e)     Awarding to Plaintiff the costs and disbursements of this action, including reasonable fees and costs to Plaintiff's attorneys, accountants, and experts; and

(f)     Granting such further relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: February 25, 2025       By:      */s/ Dustin L. Schubert*
                                       Robert C. Schubert (S.B.N. 62684)
                                       Dustin L. Schubert (S.B.N. 254876)
                                       **SCHUBERT JONCKHEER & KOLBE LLP**
                                       2001 Union St., Suite 200
                                       San Francisco, CA  94123
                                       Telephone:  (415) 788-4220
                                       Fax:          (415) 788-0161
                                       rschubert@sjk.law
                                       dschubert@sjk.law

                                       *Counsel for Plaintiff Angelo Barbieri*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

# **VERIFICATION**

  I, Angelo Barbieri, am the plaintiff in this action. I hereby verify that I have reviewed the Verified Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. I verify that I am a current holder of stock of ImmunityBio, Inc., was a holder of such stock at the time of the wrongs complained of in the Verified Shareholder Derivative Complaint, and continuously held shares of ImmunityBio stock thereafter. As to those allegations and facts therein of which I have personal knowledge, those allegations and facts are true and correct to the best of my knowledge, information, and belief. As to those allegations and facts therein of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date:   February 24, 2025       *Angelo Barbieri*

              Angelo Barbieri